UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CESAR ERNESTO TUNACA-
GALINDO,

Petitioner,

v.

ATTORNEY GENERAL OF THE
UNITED STATES, Department of
Justice, et al.,

Respondents.

Case No.:  26cv2226-LL-BJW

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

[ECF No. 1]

Before the Court is Petitioner Cesar Ernesto Tunaca-Galindo's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondents filed a Return [ECF No. 4], and Petitioner filed a Traverse [ECF No. 5]. For the reasons set forth below, the Court **GRANTS** the Petition.

I.    BACKGROUND

Petitioner is a citizen of El Salvador, who entered the United States without inspection in April 2022. ECF No. 4-1 at 3. He was apprehended soon after, issued a Notice to Appear, and released on parole pursuant to 8 U.S.C. § 1182(d)(5)(A). *Id.*; ECF No. 1-2 at 2. While Petitioner was on parole, he attended check-in appointments with Immigration

/ / /

1

and Customs Enforcement ("ICE"). Petitioner's parole automatically expired on about April 29, 2023. ECF No. 1-2 at 2.

On June 20, 2025, he appeared for a credible fear interview with an asylum officer, and then ICE took him into custody and detained him. Pet. ¶ 20. On June 26, 2025, an immigration judge at the Los Angeles Immigration Court ordered Petitioner removed *in absentia*. *Id.* ¶ 21. On about July 15, 2025, Petitioner filed a motion to reopen and rescind his *in absentia* removal order because he was detained at the time of the June 26, 2025 hearing and was not produced for the hearing by ICE. *Id.* ¶ 22. Petitioner's current counsel is unable to locate any result of this motion. *Id.*

On October 16, 2025, Petitioner was issued a second Notice to Appear. *Id.* ¶ 23; ECF No. 1-4 at 2.

On January 2, 2026, the Department of Homeland Security ("DHS") filed a motion to pretermit Petitioner's asylum application pursuant to the Asylum Cooperative Agreements with Ecuador, Guatemala, and Honduras. Pet. ¶ 24. Petitioner filed an asylum application on February 1, 2026. *Id.* ¶ 25. On February 26, 2026, an immigration judge granted DHS's motion to pretermit and ordered Petitioner removed to Ecuador, with Guatemala and Honduras as alternative countries for removal. *Id.* ¶ 26. Petitioner filed an appeal on March 16, 2026, which is pending before the Board of Immigration Appeals. *Id.* ¶ 27.

On April 8, 2026, Petitioner filed the instant Petition. Pet.

## II.   LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case / / /

2

26cv1410-LL-SBC

by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## III.   DISCUSSION

Petitioner alleges that his re-detention without notice and a hearing violates the Fifth Amendment's Due Process Clause, and that his prolonged detention violates 8 U.S.C. § 1231(a)(6), *Zadvydas v. Davis*, 533 U.S. 678 (2001), and due process. Pet. ¶¶ 29–49. Petitioner seeks a writ of habeas corpus requiring his release under the same conditions as before he was detained, or a bond hearing where DHS bears the burden of proof. *Id.* at 16–17.

Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), and that his re-detention without written notice of the expiration of his humanitarian parole does not violate due process. ECF No. 4 at 2–4. Respondents also argue that "a court may conclude that parole revocation must be supported by an individualized determination" and if so, the appropriate remedy is not release, but instead an individualized bond hearing where the government bears the burden to prove by clear and convincing evidence that the detainee is a flight risk and/or a danger to the community. *Id.* at 5.

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). The Due Process Clause generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "The fundamental requirement of due process is the opportunity to

26cv1410-LL-SBC

be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted).

The Court finds that having been previously released on parole, Petitioner has a protected liberty interest in remaining free from detention. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (alterations in original).

Although Petitioner's parole expired, "this private interest did not expire along with Petitioner's parole agreement." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). "Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted." *Id.* (citing *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)); *see also Morrissey*, 408 U.S. at 482 ("By whatever name, the liberty [of parole] is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal."). "That the express terms of the parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide a[n] individualized hearing prior to re-detaining the parolee." *Ramirez Tesara*, 800 F. Supp. 3d at 1136 (citing *Pinchi*, 792 F. Supp. 3d at 1032).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews*, 424 U.S. at 334–35. To determine which procedures are constitutionally sufficient to satisfy the Due

26cv1410-LL-SBC

Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The Court finds that all three factors support a finding that the government's revocation of Petitioner's liberty without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody. *See Pinchi*, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citations omitted)). Freedom from detention is a fundamental part of due process protection. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))).

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's liberty was revoked without providing him a reason for revocation or giving him an opportunity to be heard. There is no indication that Petitioner has failed to abide by the conditions of his parole. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Id.* The risk of erroneous deprivation of Petitioner's liberty is high because neither the government nor Petitioner has had an opportunity to determine whether there is any valid basis for his detention. *Pinchi*,

5

26cv1410-LL-SBC

792 F. Supp. 3d at 1035 (citation omitted). It follows that the probable value of additional procedural safeguards, such as notice and a pre-deprivation hearing, is also high.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); *Alvarenga Matute v. Wofford*, 807 F. Supp. 3d 1120, 1130 (E.D. Cal. 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). There is also no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. *See Pinchi*, 792 F. Supp. 3d at 1036 ("In immigration court, custody hearings are routine and impose a minimal cost." (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025))).

Therefore, because Respondents detained Petitioner by revoking his parole without notice or a pre-deprivation hearing in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) (finding the petitioner's parole was revoked without notice and a hearing and without a showing of a change of circumstances, thus violating her due process rights and rendering her detention unlawful). The proper remedy for the unlawful detention is Petitioner's immediate release subject only to the conditions of his preexisting parole. *See Noori v. LaRose*, 807 F. Supp. 3d 1146, 1156 (S.D. Cal. 2025) (finding DHS violated the petitioner's due process rights by revoking his parole without notice or a hearing and ordering his immediate release); *Sanchez*, 2025 WL 2770629, at *5 (same); *Ortega*, 415 F. Supp. 3d at 970 (ordering immediate release after the petitioner was detained while out on bond without notice or pre-deprivation hearing).

///

///

///

26cv1410-LL-SBC

Accordingly, the Court **GRANTS** the Petition. [1]

## IV.    CONCLUSION

For the reasons above, the Court **ORDERS**:

1.    Petitioner's Petition for Writ of Habeas Corpus is **GRANTED**.[2]

2.    Respondents shall immediately release Petitioner from custody subject only to the conditions of his preexisting parole.

3.    The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated:  May 5, 2026

_____

Honorable Linda Lopez
United States District Judge

---

[1] Because the Court reaches this decision on procedural due process grounds, it declines to reach Petitioner's other grounds for relief.

[2] Petitioner requested attorney's fees and costs under the Equal Access to Justice Act [Pet. at 17], which the Court **DENIES without prejudice**.

26cv1410-LL-SBC